

**ORDERED in the Southern District of Florida on March 18, 2011.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                                                  Case No. 08-22389-BKC-AJC
                                                                                         Chapter 7
JOSEPH J. WEISENFELD,

    Debtor.
_____/
BARRY E. MUKAMAL, TRUSTEE,                              Adv. No. 09-2526-BKC-AJC-A

    Plaintiff,

vs.

JOSEPH J. WEISENFELD,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION
FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS II, III & VIII OF
COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE AND (2) DENYING
DEBTOR'S DISCHARGE**

    **THIS MATTER** came before the Court on February 10, 2011 at 10:30 a.m. for hearing (the

"Hearing") upon *Plaintiff's Motion for Judgment on the Pleadings as to Counts II, III and VIII of*

*Complaint Objecting to Debtor's Discharge and Incorporated Memorandum of Law* (D.E. 42)(the "Motion"), filed by Plaintiff, Barry E. Mukamal, as Chapter 7 Trustee of the Bankruptcy Estate of Joseph J. Weisenfeld (the "Plaintiff" or the "Trustee") against the Debtor, Joseph J. Weisenfeld (the "Debtor" or the "Defendant"). The Court, having reviewed and considered the (i) Motion, (ii) *Complaint* (D.E. 1), (iii) *Debtor's Amended and Restated Answer and Affirmative Defenses* (D.E. 35)(the "Amended Answer"), (iv) this Court's *Order on Plaintiff's Motion for Judgment on the Pleadings as to Counts II, III and VIII of Complaint Objecting to Debtor's Discharge and Incorporated Memorandum of Law* (D.E. 51)(the "February 15th Order"), (v) *Debtor's Motion for Enlargement of Time* (D.E. 54)(the "Debtor's Motion to Enlarge"), (vi) this Court's *Order Granting Motion for Enlargement of Time* (D.E. 55)(the "March 1st Order") and (vii) the Court file; having heard argument of Trustee's counsel at the Hearing; and noting no filed opposition thereto; and for the reasons set forth on the record at the Hearing, which are incorporated herein by reference, grants the Motion.

## FACTS

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. The relief sought in the Complaint is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(J). The statutory predicates for the relief granted herein are Sections 105, 521 and 727 of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 4002, 4004, 4005, 4006 and 7001(4).

3. Upon review of the Certificates of Service of (i) the Motion, (ii) the Notice of Hearing of the Motion (D.E. 44), (iii) the Re-Notice of Hearing of the Motion (D.E. 49), (iv) the February

15th Order (D.E. 52) and (v) the March 1st Order (D.E. 56), the Court finds that the Debtor was properly and timely served with sufficient notice of the Motion and the Hearing.

4. After a preliminary hearing on the Motion regarding the Trustee's entitlement to the relief sought in the Motion, the Court provided the Debtor an opportunity, post-Hearing, to (a) file a response in opposition to the Motion and/or (b) a competing order denying the Motion. *See* February 15th Order at ¶ 2. Additionally, this Court granted the Debtor's Motion to Enlarge, allowing the Debtor additional time within which to file a pleading in opposition to the Motion. *See* March 1st Order. Notwithstanding proper and timely notice of the Motion and the Hearing, the Debtor has not filed a substantive response to the Motion.

## **Background**

5. The underlying bankruptcy case (the "Main Case") was commenced with the filing of an involuntary Chapter 7 bankruptcy petition against the Debtor on August 28, 2008 (the "Petition Date") by Chicago Title Insurance Company ("Chicago Title").

6. On December 29, 2008, the Debtor filed his *Consent to Entry of Order of Relief in Involuntary Petition* (Main Case D.E. 47), and on December 31, 2008, an *Order for Relief* was entered (Main Case D.E. 48).

7. On January 8, 2009, Barry E. Mukamal was appointed as Chapter 7 trustee of the Debtor's bankruptcy estate (Main Case D.E. 51).

8. On January 15, 2009, the Debtor filed, among other required pleadings and papers in the Main Case, his Schedules and Statement of Financial Affairs, which he signed under penalty of perjury (Main Case D.E. 61).

9. On August 28, 2008, Chicago Title also filed an involuntary Chapter 7 bankruptcy petition against Weisenfeld & Associates, P.A. ("WAPA"), which was assigned Case No. 08-22384-BKC-AJC (the "WAPA Case")(WAPA Case D.E. 1).

10. On December 22, 2008, WAPA filed its *Consent to Entry of Order of Relief in Involuntary Petition* (WAPA Case D.E. 33), and on December 23, 2008, an *Order for Relief* was entered in the WAPA Case (WAPA Case D.E. 34).

11. On January 7, 2009, WAPA filed its Schedules and Statement of Financial Affairs and Declaration Under Penalty of Perjury, which were signed by the Debtor, as WAPA's president and sole shareholder, under penalty of perjury (WAPA Case D.E. 39 & 41).

12. On January 8, 2009, Barry E. Mukamal was appointed as Chapter 7 trustee of the bankruptcy estate of WAPA (WAPA Case D.E. 42).

13. On December 20, 2009, the Trustee filed his *Complaint Objecting to Debtor's Discharge* (D.E. 1), which seeks denial of the Debtor's discharge pursuant to 11 U.S.C. §§727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(4)©, 727(a)(4)(D), 727(a)(5), 727(a)(6)(A) and 727(a)(7).

14. On September 12, 2010, the Debtor filed his *Amended and Restated Answer and Affirmative Defenses to the Complaint* (D.E. 35)(the "Amended Answer").

15. Trial has not yet been set in this case.

16. By and through the Motion, Plaintiff seeks entry of judgment on the pleadings as to Count II (denial of discharge pursuant to 11 U.S.C. §727(a)(3)), Count III (denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A)) and Count VIII (denial of discharge pursuant to 11 U.S.C. § 727(a)(7)) of the Complaint.

**Undisputed Facts**

**A.    In General**

17.    Prior to his disbarment and incarceration, the Debtor was an attorney. *See* Complaint, at ¶ 10; Amended Answer, at ¶ 10.

18.    The Debtor conducted his law practice through WAPA, and was WAPA's sole officer, director and shareholder. *See* Complaint, at ¶ 11; Amended Answer, at ¶ 11.

19.    On December 19, 2008, the District Court[1] entered its *Judgment in a Criminal Case*, adjudicating the Debtor guilty of wire fraud, and sentencing the Debtor to sixty-three (63) months in federal prison. *See* Complaint, at ¶ 16; Amended Answer, at ¶ 16.

20.    On February 25, 2009, the District Court entered its *Amended Judgment in the Criminal Case*, which ordered the Debtor to pay restitution of $2,809,637.09 to his victims. *See* Complaint, at ¶ 17; Amended Answer, at ¶ 17.

21.    The Debtor began his incarceration on or about April 2, 2009. *See* Complaint, at ¶ 19; Amended Answer, at ¶ 19.

**B.    Admissions by Debtor in Amended Answer**

22.    The Debtor admits that his Statement of Financial Affairs (Main Case D.E. 61)(the "SOFA") reflects that he had not prepared or filed his personal income tax returns for 2006, 2007 and 2008. *See* Complaint, at ¶ 81; Amended Answer, at ¶ 81.

23.    The SOFA lists $0.00 income for the two years prior to the Petition Date (Main Case D.E. 61, at p. 36).

---

[1] All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Complaint.

24. The Debtor admits that his primary source of income for 2006 and 2007 was from WAPA. *See* Complaint, at ¶ 83; Amended Answer, at ¶ 83.

25. The Debtor admits that he was the sole shareholder of WAPA, and was the person responsible for maintaining WAPA's books and records. *See* Complaint, at ¶ 84; Amended Answer, at ¶ 84.

26. The Debtor admits that WAPA did not file Federal Income Tax Returns for 2006, 2007 or 2008. *See* Complaint, at ¶ 86; Amended Answer, at ¶ 86.

27. The Debtor testified ("to the best of his recollection") during his January 26, 2009 Section 341 Meeting of Creditors, that (i) his schedules and/or statement of financial affairs, and (ii) WAPA's schedules and/or statement of financial affairs required "further clarification," and the Debtor's former counsel advised the Trustee, on the record at the 341 Meeting, that amendments in the Main Case would be filed "in the next few days." *See* Complaint, at ¶ 66; Amended Answer, at ¶ 66.

28. The Debtor admits that he failed to schedule a transaction wherein he sold land in Polk County, Florida (the "Polk County Land Sale"). *See* Complaint, at ¶ 68; Amended Answer, at ¶ 68.

29. The Debtor's SOFA does not disclose the Polk County Land Sale (Main Case D.E. 61, at p. 39).

30. The Debtor admits that he surrendered stock he owned in Plus International Bank (the "Plus Bank Stock Transfer"). *See* Complaint, at ¶ 69; Amended Answer, at ¶ 69.

31. The Debtor's SOFA does not disclose the Plus Bank Stock Transfer. *See* Main Case DE 61, at p. 39.

32.     The Debtor admits that he refinanced his home and the proceeds from the refinancing were deposited into an undisclosed account with Gibraltar Bank & Trust (checking account X8561) (the "Unscheduled Gibraltar Bank Account"). *See* Complaint, at ¶ 79; Amended Answer, at ¶ 79.

33.     The Unscheduled Gibraltar Bank Account is not listed on Schedule "B." *See* Main Case D.E. 61, at p. 9.

34.     The Debtor admits that, after he refinanced his home, he transferred $200,000.00 of the net refinancing proceeds from the Unscheduled Gibraltar Bank Account to Antoine Ballan on March 17, 2008, as repayment of an alleged loan from Mori Management and Investments, Inc. to the Debtor and/or WAPA, secured by an unrecorded mortgage on the Debtor's home (the "Refi Transfer"). *See* Complaint, at ¶¶ 70, 73 & 97; Amended Answer, at ¶¶ 70, 73 & 97.

35.     The Debtor's SOFA does not disclose the Refi Transfer. *See* Main Case D.E. 61, at p. 39.

36.     The Debtor admits that he has failed to amend his Schedules and SOFA to disclose: (i) the Unscheduled Gibraltar Bank Account; (ii) the Polk County Land Sale; (iii) the Plus Bank Stock Transfer; and (iv) the Refi Transfer. *See* Complaint, at ¶¶ 76 & 80; Amended Answer, at ¶¶ 76 & 80.

37.     The Debtor admits that his Schedule "I" reflects $0.00 monthly income, his Bankruptcy Schedule "J" reflects $11,071.00 in monthly expenditures and a monthly deficit of $11,071.00 and that his bankruptcy schedules do not contain any explanation of how the Debtor and his wife paid their basic day to day living expenses. *See* Complaint, at ¶¶ 93-95; Amended Answer, at ¶¶ 93-95.

38. The Debtor signed and filed his bankruptcy schedules and SOFA under penalty of perjury (Main Case DE 61, at pp. 35 & 43).

39. The Debtor admits that Line 16 of WAPA's Schedule "B" entitled "Accounts Receivable" states "Debtor has been without staff and power supply from July, 2008. There was work in process that could potentially be billed but there was no way to produce said billing. It is estimated that the aggregate amount would be between $75,000.00 and $150,000.00 but this is for work completed some time ago so therefore collectibility is questionable." *See* Complaint, at ¶ 57; Amended Answer, at ¶ 57; WAPA Schedule "B."

40. The Debtor admits that WAPA has not filed 2006, 2007 or 2008 Federal Income Tax Returns. *See* Complaint, at ¶¶ 59 & 86; Amended Answer, at ¶¶ 59 & 86.

41. The Debtor admits that his primary source of income for 2006 and 2007 was WAPA. *See* Complaint, at ¶ 83; Amended Answer, at ¶ 83.

42. The Debtor admits that, as the sole shareholder of WAPA, he was the person responsible for maintaining WAPA's books and records. *See* Complaint, at ¶ 84; Amended Answer, at ¶ 84.

## CONCLUSIONS OF LAW

I. **Applicable Standard for Entry of Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Bankruptcy Rule 7012 incorporates Rule 12© of the Federal Rules of Civil Procedure into adversary proceedings. Fed.R.Bankr.P. 7012.

Judgment on the pleadings under Rule 12© is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (citing) *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998). Dischargeability actions may be appropriately decided by way of a motion for judgment on the pleadings. *See, e.g., Bulter v. Liu (In re Liu)*, 288 B.R. 155 (Bankr. N.D. Ga. 2002).

**II.    Judgment on Count II of the Complaint Under 11 U.S.C. §727(a)(3)**

Section 727(a)(3) of the Bankruptcy Code states as follows:

> (a)    The court shall grant the debtor a discharge, unless-
>
> > (3)    the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which he debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

"The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *In re Greene*, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (citing *PNC Bank v. Buzzelli (In re Buzzelli),* 246 B.R. 75, 95 (Bankr. W.D. Pa. 2000) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir. 1992)). "This statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Buzzelli*, 246 B.R. at 95.

The elements of a section 727(a)(3) claim are simple and concise: (1) the creditor must prove that the debtor failed to keep or preserve records; and (2) such failure was not reasonable under the circumstances and this failure makes it impossible to ascertain the debtor's true financial condition

or business transactions. *In re Henderson,* 423 B.R. 598, 616 (Bankr. N.D.N.Y. 2010) (internal citations omitted). All records that are necessary to understand a debtor's financial condition are within the scope of this section. *Id.* at 616-17 (citing *Buckeye Ret. Co. v. Bishop (In re Bishop),* 420 B.R. 841, 847 (Bankr. N.D. Ala. 2009)); *Serv. Liquor Dists., Inc. v. Gudowitz (In re Gudowitz)*, 1986 WL 28906, 1986 Bankr. LEXIS 5735 (Bankr. S.D.N.Y. July 8, 1986) (all books and materials which shed light on what was done with a debtor's estate and the factors which led to the filing for relief are material to a § 727(a)(3) analysis).

In a personal bankruptcy case, "the quintessential documents that must be preserved and kept are debtor's income tax returns." *Henderson,* 423 B.R. at 617 (internal citation omitted); *see also*, 11 U.S.C. § 521(e)(2)(A) (debtor is statutorily obligated to provide the case trustee and creditors who request the same with a copy of his or her Federal tax return or transcript for the most recent tax year ending immediately before commencement of the case) and 11 U.S.C. § 521(f) (debtor is statutorily obligated to file with the court late-filed Federal tax returns for years preceding the bankruptcy filing and future Federal tax returns for each tax year while the bankruptcy case is pending).

"A creditor objecting to a discharge under § 727(a)(3) has the initial burden of proving (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Buzzelli,* 246 B.R. at 95 (citing *Meridian Bank*, 958 F.2d at 1232). Once a creditor shows that a debtor's records are insufficient, the burden of going forward shifts to the debtor to justify such insufficiencies. *Buzzelli*, 246 B.R. at 96; *In re Greene*, 340 B.R. 93, 98-99 (Bankr. M.D. Fla. 2006). "Factors which may be considered by the court in making this factual determination include debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of

debtor's business, debtor's personal financial structure, and any special circumstances that may exist." *Id.*

The Trustee has met his burden under § 727(a)(3), but the Debtor has not. A debtor's tax returns are quintessential documents that enable a bankruptcy trustee and other creditors to be allowed to understand the financial condition of the debtor. The Debtor has not prepared or filed his personal Federal income tax returns for 2006, 2007 or 2008; and WAPA, the primary source of Debtor's income for 2006 and 2007, also did not file its Federal income tax returns for 2006, 2007 and 2008 – and it was the Debtor who was responsible for maintaining WAPA's book and records. The Debtor was a practicing attorney who possessed the necessary level of knowledge, education and sophistication to understand his legal obligation to file tax returns and the ramifications of his failure to do so. The Debtor did not begin his incarceration until April 2, 2009, approximately eight (8) months after the Petition Date. Within that period of time, the Debtor had the opportunity to prepare and file said tax returns, but did not do so. Moreover, the Debtor has provided no justification for failing to file 2006, 2007 and 2008 Federal income tax returns for himself and for WAPA.

The Debtor's failure to, among other things, file tax returns for himself and WAPA, and maintain accurate and complete books and records for WAPA, prevent the Trustee from ascertaining the true financial condition of the Debtor and WAPA and from properly administering the bankruptcy estates of the Debtor and WAPA. Accordingly, the Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(3).

**III.    Judgment on Count III of the Complaint Under 11 U.S.C. 727(a)(4)(A)**

Section 727(a)(4)(A) of the Bankruptcy Code provides as follows:

(a)    The court shall grant the debtor a discharge, unless-

> (4) the debtor knowingly and fraudulently, in or in connection with the case-
>
> (A) made a false oath or account

To deny a debtor's discharge under § 727(a)(4)(A), the Court must find that the debtor "knowingly made a false oath that was both fraudulent and material." *In re Unger,* 333 B.R. 461, 465 (Bankr. M.D. Fla. 2005) (internal citations omitted). The "[k]nowing failure to disclose information on schedules violates § 727(a)(4)(A) and empowers the court to deny discharge under that section." *In re Prevatt*, 261 B.R. 54, 59 (Bankr. M.D. Fla. 2000).

In this case, the Court concludes that the Debtor knowingly made false statements under oath. The Debtor failed to schedule the Unscheduled Gibraltar Bank Account on Schedule "B". The Debtor failed to disclose the following transfers in Paragraph 10 of his SOFA: (i) the Polk County Land Sale; (ii) the Plus Bank Stock Transfer; and (iii) the Refi Transfer. All of these omissions are admitted by the Debtor in his Amended Answer. "The subject matter of a false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Eigsti*, 323 B.R. 778, 784 (Bankr. M.D. Fla. 2005) (internal citations omitted).

The Court concludes the Debtor's omissions are material in that they directly concern business transactions, the discovery of assets, business dealings and the existence and disposition of Debtor's property. The Court further concludes that Debtor has engaged in a pattern of concealment, or at the very least reckless indifference for the truth, by failing to schedule the Unscheduled Gibraltar Bank Account on Schedule "B" and by failing to disclose in Paragraph 10 of his SOFA: (i) the Polk County Land Sale; (ii) the Plus Bank Stock Transfer; and (iii) the Refi Transfer. The Debtor's omissions were material false oaths, involving substantial dollar amounts,

that were knowingly made by the Debtor, thereby affecting the Trustee's administration of estate assets. This pattern of concealment evidences the fraudulent intent required under 11 U.S.C. §727(a)(4).

"[M]ultiple inaccuracies in a debtor's petition and bankruptcy schedules taken cumulatively evidences a 'cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A).' " *In re Leffingwell*, 279 B.R. 328, 351 (Bankr. M.D. Fla. 2002) (quoting from *In re Hatton*, 204 B.R. 477, 484 (E.D.Va.1997)). In *Leffingwell,* after establishing fraudulent intent with the debtors' pattern of concealment, the court also concluded that the debtors' reckless indifference for the truth established fraudulent intent. *Id.* at 351- 52. The debtors in *Leffingwell* attempted to explain their false oaths and omissions in their Schedules and Statement of Financial Affairs by claiming that the errors were inadvertent, a result of the debtors' ignorance of bankruptcy, and caused by the hurried manner in which these papers were prepared. *Id.* As both debtors were highly educated and accustomed to dealing with financial transactions, the court found that they understood the importance of ensuring that their paperwork was accurate and truthful. *Id.* The *Leffingwell* court concluded that even if the false oaths or omissions had been innocently made, "a debtor's failure to amend schedules 'can be considered reckless indifference to the truth and is tantamount to fraud.' " *Id.* (quoting *In re Green*, 268 B.R. 628, 648 (Bankr. M.D. Fla. 2001)). The debtors in *Leffingwell* had not made any attempt to amend their petition or schedules to correct the false oaths and the court therefore held that the false oaths and omissions were made with fraudulent intent because of the debtors' reckless indifference to the truth. *Id.*

Similarly in this case, the Debtor admits that during his January 26, 2009 meeting of creditors, he acknowledged his Schedules and SOFA required further clarification and that amendments would be filed within the next few days. Amendments to the Debtor's Schedules or

SOFA have never been filed. The Debtor in this case is a former attorney who has represented himself in this proceeding. He is highly educated and accustomed to dealing with financial transactions. While the Debtor, from prison, has filed pleadings, papers and objections in the Main Case, the WAPA Case and the instant adversary proceeding, he has yet to file an amendment to his Schedules or SOFA – which he admits in the Amended Answer, are inaccurate. Based upon the foregoing, the Court concludes that the false oaths and omissions in the Debtor's Schedules and SOFA were made with the requisite fraudulent intent, or reckless indifference to the truth constituting fraudulent intent. Accordingly, the Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(A).

**IV.     Judgment on Count VIII of the Complaint Under 11 U.S.C. §727(a)(7)**

Section 727(a)(7) of the Bankruptcy Code provides as follows:

>    (a)    The court shall grant the debtor a discharge, unless-
>
>    (7)    has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case under this title or under the Bankruptcy Act, concerning an insider.

The Debtor admits in his Amended Answer that he was the sole shareholder of WAPA, and was the person responsible for maintaining WAPA's books and records. Accordingly, WAPA is an insider of the Debtor pursuant to 11 U.S.C. § 101(31)(A)(iv).

Paragraph 1 of WAPA's SOFA requires the disclosure of income from operation of a business for a specified period of time. No such disclosure was made. Rather, Paragraph 1 of the WAPA SOFA simply states that, "Tax returns have not been prepared for the years 2006 or 2007; amount of income unknown." Additionally, in his capacity as WAPA's president and sole shareholder, the Debtor was unable to list one single account receivable on WAPA's Schedule "B."

Rather, Line 16 of WAPA's Schedule "B" merely states that "Debtor has been without staff and power supply from July, 2008. There was work in process that could potentially be billed but there was no way to produce said billing. It is estimated that the aggregate amount would be between $75,000.00 and $150,000.00 but this is for work completed some time ago so therefore collectibility is questionable."

WAPA's failure to file tax returns and maintain accurate books and records has prevented the Trustee from ascertaining the true financial condition of WAPA; and, the Debtor has failed to offer any justification for failing to file the income tax returns and for failing to maintain accurate books and records, thus hindering the administration of WAPA's bankruptcy estate. Accordingly, the Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(7).

**V.     Debtor's Affirmative Defenses are Insufficient to Preclude Entry of Judgment**

"An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true'". *Ayers v. Consol. Const. Services of SW Fla., Inc.*, 2007 WL 4181910 (M.D. Fla. Nov. 26, 2007) (citing *Saks v. Franklin* Covey Co., 316 F.3d 337, 350 (2nd Cir. 2003)). If a defendant fails to allege an affirmative defense or if such defense fails as a matter of law, then judgment on the pleadings may be entered. *In re Mabbott*, 255 B.R. 787, 789 (Bankr. M.D. Fla. 2000).

Based upon careful review and consideration of the Debtor's seven (7) alleged affirmative defenses set forth in the Amended Answer, this Court concludes that none of the Affirmative Defenses are legally sufficient to preclude the entry of judgment on the pleadings in favor of the Trustee because they do not address new facts or arguments relative to Counts II, III and VIII of the Complaint. By way of example, none of the Affirmative Defenses address the Debtor's omission

of the Unscheduled Gibraltar Bank Account on Schedule "B" and his admitted failure to disclose the (i) Polk County Land Sale, (ii) Plus Bank Stock Transfer, and (iii) Refi Transfer in Paragraph 10 of his SOFA. Likewise, none of the Affirmative Defenses address the Debtor's failure to file tax returns for himself or WAPA or otherwise address Debtor's failure to maintain business records.

Because each of the Affirmative Defenses asserted by the Debtor constitute mere denials of certain allegations and/or fail as a matter of law, the Trustee is entitled to entry of judgment on the pleadings as to Counts II, III and VIII of the Complaint. It is therefore

**ORDERED AND ADJUDGED** that the Motion is GRANTED and the Debtor's discharge is DENIED pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A) and 727(a)(7). In accordance with Rule 7058 of the Federal Rules of Bankruptcy Procedure, a separate judgment denying the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A) and 727(a)(7) shall be entered contemporaneously herewith.

###

Submitted by Scott N. Brown, Esquire (and edited by the Court)

Scott N. Brown, Esquire is directed to serve copies of this order on all interested parties and to file a certificate of service.